IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOANNE M. STURGIS

      Plaintiff,

 v.

ASSET ACCEPTANCE, LLC, a Delaware limited liability company, and JOHNSON MARK, LLC, a Utah limited liability company,

      Defendants.

Civ. No. 3:15-cv-00122-AC

OPINION AND ORDER

---

ACOSTA, United States Magistrate Judge:

 This case arises out of alleged violations of the Fair Debt Collection Practices Act ("FDCPA") by Defendants Asset Acceptance, LLC ("Asset Acceptance") and Johnson Mark, LLC ("Johnson Mark") (collectively "Defendants") during Defendants' attempts to collect a debt owed by Plaintiff Joanne M. Sturgis ("Sturgis"). Sturgis alleges Defendants violated three separate provisions of the FDCPA by "engaging in unfair or unconscionable debt collection practices,"

OPINION AND ORDER - 1                          [RMD]

"making false or misleading representations" during their attempts to collect the debt, and engaging in harassing and oppressive debt-collection practices. Sturgis now moves to amend her complaint. Defendants oppose the amendments, which they claim are futile.

*Factual Background*

In November 2013, Defendants filed an action against Sturgis in Marion County Circuit Court to collect an outstanding credit card debt. (Proposed Second Amended Complaint ("PSAC") ¶ 5.) Sturgis was served with process, but did not appear in court or otherwise defend against Defendants' claims. (*Id.* ¶¶ 6, 9.) Instead, Sturgis disputed the amount owed directly to Johnson Mark, who at all relevant times served as Asset Acceptance's agent and acted to collect the debt on Asset Acceptance's behalf. (*Id.* ¶ 3.) On February 4, 2014, the Marion County circuit court entered a default judgment against Sturgis in the amount of $2,101.04 ("the Judgment"). (*Id.* ¶¶ 9, 12.) After the court entered the judgment, Sturgis wrote a letter to the court requesting a reduction of the judgment from $2,101.04 to $463.00. (*Id.* ¶ 12.) The court treated Sturgis's letter as a motion for reconsideration of the judgment, which the court denied. (*Id.*)

In the months that followed, Sturgis repeatedly corresponded with Johnson Mark in an attempt to settle the debt. In March 2014, Sturgis contacted Johnson Mark and offered to settle the judgment for $463. (*Id.* ¶ 13.) Johnson Mark represented that it would forward the offer to Asset Acceptance and inform her via email whether the offer was accepted. (*Id.*) On May 5, 2015, Johnson Mark sent Sturgis a letter offering to settle the Judgment for $1,714.02 if she paid in full by May 27, 2014. (*Id.* ¶ 14.) That same day, Johnson Mark issued a writ of garnishment on Sturgis's U.S. Bank accounts. (*Id.* ¶ 15.) Pursuant to the garnishment, U.S. Bank removed $910.01 from Sturgis's account, $810.01 of which was credited to Johnson Mark. (*Id.* ¶ 16.)

Immediately after learning of the garnishment, Sturgis contacted Johnson Mark to request written confirmation of the settlement amount. (*Id.* ¶ 17.) Johnson Mark told Sturgis she could either pay the settlement amount immediately in one lump sum or she could pay the full balance of the Judgment in monthly installments of $225.00. (*Id.* ¶ 20.) On May 12, 2014, Sturgis received an email confirming the offer for her to pay the Judgment balance in monthly installments. (*Id.* ¶ 21.) However, the email did not reference the reduced settlement amount of $1,714.02. (*Id.*) On May 29, 2014, Sturgis received a letter from Johnson Mark confirming she could pay the settlement amount if she paid it in full by May 27, 2014, two days before the letter arrived. (*Id.* ¶ 23.) Sturgis immediately called Johnson Mark, who told Sturgis it was too late to pay the settlement amount. (*Id.* ¶ 23.) After several more attempts to collect by Johnson Mark, Sturgis paid the judgment in full on July 5, 2015. (*Id.* ¶ 27.) However, on July 12, 2014, just days after the parties filed a satisfaction of judgment in Marion County court, Johnson Mark issued a civil subpoena to U.S. Bank seeking information about Sturgis. (*Id.* ¶ 29.)

*Procedural Background*

Sturgis filed her complaint in this court on January 29, 2015, alleging violations of the FDCPA for Defendants' debt-collection efforts. (Dkt. No. 1.) On March 2, 2015, Sturgis amended her claim as a matter of right. (Dkt. No. 16.) She now moves for leave to file her Proposed Second Amended Complaint ("PSAC"). (Dkt. No. 40.)

*Legal Standard*

Under Rule 15 "a party may amend its pleadings only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). The court should "freely give leave when justice so requires." *Id.* However, the court need not grant leave to amend where the amendment:

"(1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). Futility can, by itself, justify denial of a motion for leave to amend. *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). Amendment is futile if the proposed amended complaint would fail in the face of a motion to dismiss under Rule 12(b)(6). *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

*Discussion*

Sturgis moves to amend her complaint to add allegations showing additional violations of the FDCPA. Defendants each responded separately in opposition to Sturgis's motion. Both Defendants argue that Sturgis's amendments are futile. First, they contend Sturgis's amendments relating to Defendants' recovery of nine-percent prejudgment interest are precluded. Second, they argue Sturgis's amendments are barred by the statute of limitations. Finally, Asset Acceptance argues Sturgis's amendments relating to the post-satisfaction subpoena of U.S. Bank is not actionable under the FDCPA because it was not "debt-collection activity."

I. Preclusion

In Defendants' complaint against Sturgis in Marion County court, Defendants alleged they were entitled to collect the alleged debt principal, as well as nine-percent prejudgment and post-judgment interest. Pursuant to these allegations, the court assessed nine-percent prejudgment interest in the Judgment. Sturgis now claims Defendants violated the FDCPA by "attempting to collect prejudgment interest at the rate of 9% per annum, without a legal basis for doing so." (PSAC ¶ 34(f).) Defendants argue Sturgis's amendments relating to prejudgment interest are precluded by the Marion County default judgment. Sturgis contends she did not litigate the issue of whether

OPINION AND ORDER - 4                                                              [RMD]

Defendants had a legal right to recover nine-percent interest on the judgment, and thus preclusion doctrines do not bar her claim.

"The preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute . . . ." *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985). That statute provides that state court orders and judgments "shall have the same full faith and credit in every court within the united states they have by law or usage in the courts of such state from which they are taken. *Id.* (quoting 28 U.S.C. § 1738) (internal quotation marks and ellipses omitted). Thus, under the full faith and credit statute, federal courts must apply state preclusion law to analyze the preclusive effect of a state court decision. *Marrese*, 470 U.S. at 380.

## A. Claim Preclusion

Under the Oregon law of claim preclusion, a plaintiff who has prosecuted an action through to a final judgment may not thereafter prosecute "another action against the same defendant where the claim in the second action is one which is based on the same factual transaction that was at issue in the first . . . ." *Drews v. EBI Comp.*, 310 Or. 134, 140 (1990) (quoting *Rennie v. Freeway Transp.*, 294 Or. 319, 323 (1982)). Claim preclusion also applies to bar a defendant from availing "himself of defenses he might have interposed, or did interpose, in the first action." RESTATEMENT (SECOND) OF JUDGMENTS § 18 (AM. LAW INST. 1982) (cited favorably by *Drews*, 310 Or. at 140-41.) As this language suggests, a defense need not have been actually raised in the first proceeding. *Drews*, 310 Or. at 140. "Nor does it require that the determination of the issue be essential to the final or end result reached in the action, claim, or proceeding." *Id.*

However, claim preclusion forecloses litigation only of "the very same claim" or defense that

was at issue in the prior matter. *Taylor v. Sturgell*, 553 U.S. 880, 892 n. 5 (2008). The Restatement, which Oregon courts have cited favorably, bars a defendant only from asserting defenses available to him in the first action "in an action on the [first] judgment." RESTATEMENT (SECOND) OF JUDGMENTS § 18(2) (AM. LAW INST. 1982).

Here, claim preclusion does not apply because this is not the "same case" as the Marion County case. First, different claims are involved. Unlike the Marion County case, which focused on whether Sturgis owed Defendants a debt under the debt agreement, this case involves whether Defendants' attempts to collect the debt violated the FDCPA. Claim preclusion would apply to bar Defendants from suing Sturgis again for failure to pay the same amount at issue in the Marion County case. Claim preclusion would also bar Sturgis from raising the defense at issue in Defendants claims against Sturgis to collect on the default judgment. Sturgis's unpaid debt is not directly at issue in this case. Second, the claims before this court focus on adjudicative facts which were not addressed in the Marion County case, namely, whether Defendants violated a federal statute by claiming in their Marion County complaint that they were legally entitled to nine percent prejudgment interest. Third, this case is neither in the same court nor the same jurisdiction as the Marion County case. Therefore, this is not the "same case" as the Marion County case where the court entered default judgment. Therefore, Sturgis's claim is not barred by claim preclusion.

### B. *Issue Preclusion*

Defendants next argue that Sturgis's claims based on Defendants' collection of nine-percent prejudgment interest is barred by issue preclusion. Sturgis argues her claim is not issue precluded because she did not "actually litigate" the issue during the previous lawsuit. Thus, according to Sturgis, her new allegations against Defendants are not futile.

Federal courts must apply state law when attempting to discern the preclusive effect of a state-court order. *Marrese*, 470 U.S. at 380. In Oregon, a court's decision concerning a particular claim or issue "may preclude relitigation of the issue in another proceeding if five requirements are met:"

> 1. The issue in the two proceedings is identical
>
> 2. The issue was actually litigated and was essential to a final decision on the merits in the prior proceeding.
>
> 3. The party sought to be precluded has had a full and fair opportunity to be heard on that issue.
>
> 4. The party sought to be precluded was a party or was in privity with a party to the prior proceeding [and]
>
> 5. The prior proceeding was the type of proceeding to which this court will give preclusive effect.

*Nelson v. Emerald People's Util. Dist.*, 318 Or. 99, 104 (1993). Sturgis does not contest the third, fourth, and fifth *Nelson* factors are satisfied here, so the court will examine only whether the interest issue was "actually litigated" and whether there exists an identity of issues between the Marion County case and the case now before the court.

### 1. Actually Litigated

Sturgis contends issue preclusion should not apply to bar her claim because she did not "actually litigate" the relevant issue during the Marion County case. For issue preclusion to apply, the issue must have been "actually litigated" in the previous case and "essential to a final decision on the merits." *Id.* However, courts in Oregon apply issue preclusion to cases where the first case ended in a default judgment and the defendant did not appear in court or otherwise take advantage of the opportunity to "actually litigate" the issues at stake. *Gwynn v. Wilhelm*, 226 Or. 606, 610

OPINION AND ORDER - 7                                                                               [RMD]

(1961). Because an issue may be deemed "actually litigated" in an action where a default judgment is entered after one party fails to appear or otherwise actually litigate the pertinent issue, analysis of this element should focus on whether the issue was "essential to the [first] judgment." *Id.*

Defendants alleged in their Marion County complaint that they were entitled to nine-percent prejudgment interest. Sturgis failed to answer the complaint and the court entered a judgment in Defendants favor which specifically provided that Sturgis must pay $33.53 in prejudgment interest and post-judgment interest at the rate of nine percent. At that point, the issue of whether Defendants could lawfully collect nine-percent interest under the judgment was conclusively decided. It is irrelevant that Sturgis did not appear in court to contest the issue. Because whether Defendants were entitled to nine-percent prejudgment interest was pleaded in the Marion County complaint and specifically articulated in the Marion County judgment, the issue was essential to the judgment, and thus "actually litigated" in the first case.

Sturgis's position that the issue was not actually litigated is weakened further by the fact she wrote a letter to the court contesting the amount of the judgment and requesting the court to reduce Defendants' award. The court treated Sturgis's letter as a motion for reconsideration, which it denied. By filing her motion for reconsideration, she actually litigated, or had a chance to litigate, the issue now before this court. Therefore, the court concludes that the second *Nelson* factor is met.

2. Identity of Issues

Although Sturgis does not address the issue in her brief, the court considers whether there exists an "identity of issues" between this case and the Marion County case. In *Jenkins-Brown v. Liberty Acquisitions Serv., LLC*, No. 03:14-CV-1610-ST, 2015 WL 5561055 (D. Or. Sept. 14, 2015), Judge Stewart resolved nearly identical facts on a motion for summary judgment. There, the

defendants sued the plaintiff in Oregon state court to collect an outstanding debt. *Id.* at *1-*2. In their complaint, the defendants alleged they "suffered damages in an amount not to exceed $585.76, together [with] interest at 21.900% from compounded monthly from 10/30/2008 until paid . . . ." *Jenkins-Brown v. Liberty Acquisitions Servicing., LLC*, No. 03:14-CV-1610-ST, 2015 WL 1757220, at *4 (D. Or. April 16, 2015); *Jenkins-Brown v. Liberty Acquisitions Serv., LLC*, No. 03:14-CV-1610-ST, Dkt. No. 14 Ex. D at 4 (Dec. 12, 2014).

The plaintiff failed to appear and the Oregon state court entered a judgment of default in the defendants' favor. *Jenkins-Brown*, 2015 WL 5561055, at *1-*2. The state court's default judgment provided that the defendants were entitled to $1,215.50 in prejudgment interest but did not specifically articulate how the court reached this amount. *Id.* at *2. The plaintiff subsequently brought suit in federal court and alleged the defendants violated the FDCPA, in part because defendants allegedly misrepresented in the Oregon state court complaint that they were entitled to prejudgment interest. *Id.*. The defendants moved for summary judgment, arguing that issue-preclusion barred the plaintiff from alleging claims premised on the defendants' collection of prejudgment interest. *Id.* at *1.

The court denied the motion for summary judgment and concluded there was no identity of issues among the two cases. *Id.* at *8. The court observed that "nothing in the state court complaint refers to or establishes the terms and conditions applicable to [the plaintiff's contract] with U.S. Bank, and more importantly, whether [the plaintiff] ever entered in the generic and unsigned [contract] . . . ." *Id.* The court continued, "[n]one of the issues litigated and reduced to the default judgment in state court involves [the defendant's] debt collection practices which are at issue here. False, deceptive, or misleading representations within collection complaints, made during litigation,

and communicated post-judgment, constitute FDCPA violations." *Id.* (citing *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033 (9th Cir. 2010)). The court was particularly persuaded by the fact Defendants did not allege in the state-court complaint that the plaintiff agreed to pay interest on the debt or that interest was due under the debt agreement. *Jenkins-Brown*, 2015 WL 5561055, at *8. Because it was not apparent from the face of the state-court record that the plaintiff owed interest under the debt agreement, the plaintiff was not precluded from alleging the defendants violated the FDCPA through their allegedly misleading and untruthful allegations. *Id.*

Despite the factual similarities between this case and *Jenkins-Brown*, a crucial distinction compels this court to conclude there is identity of issues in this case. In the Marion County case, the court determined Defendants were entitled to a judgment which specifically included nine-percent interest. The issue in this case is whether Defendants' allegation in the Marion County complaint that Sturgis agreed to pay interest on the debt and that the correct interest rate was nine percent, was misleading and in violation of the FDCPA. As the court has already discussed, the defendant in *Jenkins-Brown* failed to allege, and the state court failed to articulate in the default judgment, that the creditor was entitled to prejudgment interest under the terms of the debt agreement. *Id.* Here, however, Asset Acceptance alleged in the Marion County court complaint that "[a]s part of the Agreement, [Sturgis] agreed to pay interest on the amounts borrowed. The applicable rate of interest is 9.00% based upon the agreement or as provided by ORS 82.010." (Declaration of Timothy J. Fransen ("Fransen Decl") Ex. A at 2.) In addition, the default judgment awarded $33.53 in "interest accrued," and states that post-judgment interest should be calculated at a nine-percent interest rate. (*Id.* at 5-6.)

In Oregon, as in other jurisdictions, a default establishes the truth of factual allegations

contained in the complaint. *Rajneesh Found. Int'l v. McGreer*, 303 Or. 139 (1987). When Sturgis failed to answer Asset Acceptance's Marion County complaint and default was entered, Sturgis constructively admitted that she "agreed to pay interest on the amounts borrowed" and that the "applicable rate of interest is 9.00% . . . ." (Fransen Decl. Ex. A at 2.) Due to the legal effect of this admission, Sturgis cannot now allege in good faith that the Defendants' allegations regarding interest were "misleading representations" violative of the FDCPA.

Sturgis's new allegations regarding the nine-percent prejudgment interest are barred by issue preclusion. Because they are barred, her request to amend her complaint to add allegations regarding the issue is one which seeks to add a futile claim. Accordingly, Sturgis's motion to amend her complaint on this point is denied.

II. Statute of Limitations

Defendants contend Sturgis's remaining amendments are futile because they are time-barred under the FDCPA's one-year statute of limitations. Sturgis argues that her proposed amendments relate back to the filing date for her original complaint. She also contends the discovery rule renders her claims timely because she did not discover the unlawful nature of Defendants' conduct until discovery in this case was underway.

Civil claims under the FDCPA must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). A cause of action typically accrues when the last essential element of a cause of action occurs. *Cal. Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1406 (9th Cir. 1995). A defendant relying on the statute of limitations as an affirmative defense bears the burden of producing evidence which shows the plaintiffs' claims are time-barred. *Id.*

Sturgis alleges in the PSAC that Defendants violated the FDCPA through their

misrepresentations between November 2013 and July 2014. However, Sturgis filed her motion for leave to amend on October 30, 2015, so claims which accrued before October 30, 2014, are barred under the one-year statute of limitations unless those claims relate back to the January 29, 2015 filing date of her original complaint, or the discovery rule applies to them.

    *A. Relation Back*

    Federal Rule of Civil Procedure 15 provides that amendments to a pleading "relate back" to the date the original pleading was filed when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading . . . ." FED. R. CIV. P. 15(c)(1)(B). To determine whether the amendments derive from the same "conduct, transaction, or occurrence" as the original pleading, the court analyzes whether "[b]oth pleadings emanate from a common core of operative facts." *Martell v. Trilogy Ltd.*, 872 F.2d 322, 325 (9th Cir. 1989). The Ninth Circuit has explained that, "[w]hen a suit is filed in federal court under the Rules, the defendant knows that the whole transaction described in it will be fully sifted, by amendment if need be, and that the form of the action or the relief prayed or the law relied on will not be confined to their first statement." *Id.* at 326 (quoting *Barthel v. Stamm*, 1454 F.2d 487, 491 (5th Cir. 1944)). To that end, the Ninth Circuit and the Supreme court have instructed lower courts "to heed carefully the command of Rule 15" of "freely granting leave to amend" when analyzing whether amendments relate back. *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 933 (9th Cir. 2007).

    In cases brought under the FDCPA, the Ninth Circuit has given a broad interpretation to the phrase "conduct, transaction, or occurrence" in determining whether a plaintiff's amendments relate back to his or her original complaint. *Id.* In *Guerrero*, the plaintiff sued the defendant for violations

of the FDCPA based on two letters the defendant sent plaintiff in an attempt to collect a debt. *Id.* at 930. The plaintiff later attempted to amend his complaint to add allegations that the defendant violated the FDCPA by means of a third letter sent to the plaintiff's attorney before the case was filed. *Id.* at 932. The court permitted the amendment and allowed relation back because the amendments alleged claims under the same cause of action and merely added more detailed facts. *Id.* at 933. Moreover, the court determined the new claims based on the third letter "arose out of the same underlying transaction; namely, [the defendant's] attempt to collect a debt" owed by the plaintiff. *Id.*

The same analysis applies in this case. All of Sturgis's proposed amendments involve the same transaction or occurrence because they relate to Defendants' attempt to collect Sturgis's debt. Sturgis alleges Defendants violated the FDCPA by engaging in "unconscionable" conduct during debt collection, by making "false and misleading representations" and by "engaging in conduct that natural consequence of which was to harass or oppress" Sturgis. Because all of Defendants' debt-collection efforts constitute the "same transaction or occurrence" under *Guerrero*, Sturgis's proposed amendments relate back to the original filing date of January 29, 2015.

That Sturgis's amendments relate back does not necessarily save her proposed amendments from being barred by the statute of limitations. Given the court's conclusion that Sturgis's amendments relate back, her proposed amended claims are timely so long as they are based on facts which occurred on or after January 29, 2014. Although most of Sturgis's proposed allegations meet this deadline, some do not. Most of Sturgis's proposed amendments allege violations of the FDCPA beginning in March 2014 and continuing thereafter. These alleged violations occurred within the one-year statute of limitations and are not futile as alleged. However, paragraphs 34(c), (d), and (e),

paragraphs 36(c), (d) and (e), and paragraph 38(d) allege claims premised on Defendants' conduct during November 2013. Therefore, absent an exception, the claims alleged in those subparagraphs accrued more than one year before Sturgis filed her Complaint and are barred by the statute of limitations unless they are saved by the discovery rule.

### B. Discovery Rule

Under the discovery rule, a plaintiff's claim does not accrue "until the plaintiff is on inquiry notice of its injury (and wrongful cause)." *Id.* Where a plaintiff suffers a legal injury, the limitations period does not begin to run until the plaintiff has discovered that his or her rights have been violated and the defendant is responsible for the injury, even when significant time elapses between the occurrence and discovery of the injury. *Id.* Where a plaintiff relies on the discovery rule to avoid a statute-of-limitations defense, he or she bears the burden of pleading facts which justify application of the rule. *Id.*; *FDIC v. Smith*, 328 Or. 420, 432 (1999). In *Magnum v. Action Collection Serv., Inc.*, 575 F.3d 935 (2009), the Ninth Circuit held the "discovery rule" applies to claims under the FDCPA. Thus, under *Magnum*, the limitations period on an FDCPA claim begins to run "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Id.* at 940.

Defendants contend that the discovery rule does not render timely Sturgis's claims to the extent they are premised on Defendants' conduct during the Marion County lawsuit. In support, they cite *Naas v. Stolman*, 130 F.3d 892, 893 (9th Cir. 1997), which unequivocally held that, where the alleged unfair debt collection practices are statements made in a legal complaint, the statute of limitations begins to run on the date the lawsuit was filed. However, because *Naas* predates *Magnum*, *Naas* does not entirely control the precise issue Sturgis raises in her PSAC. Moreover, *Naas* the court did not consider or decide whether the discovery rule applied. That said, the holdings

in *Naas* and *Magnum* are not in conflict. The *Naas* holding stands for the now-established proposition that where an FDCPA claim relies on statements made in legal briefs or pleadings, the statute of limitations begins to run on the date the lawsuit was filed. *Magnum* expands on that proposition to hold that a claim does not accrue until a plaintiff discovers that the defendants' legal assertions in that lawsuit violated the FDCPA.

Sturgis argues she did not know until discovery disclosures in this case that some of Defendants' statements and representations were untrue or misleading. Thus, according to Sturgis, the statute of limitations did not begin to run until she discovered that Defendants' misleading statements and allegations violated the FDCPA. The court agrees.

However, as discussed above, Sturgis bears the burden of pleading facts which show she is entitled to the benefit of the discovery rule. She does not meet her burden of doing so in the PSAC. Sturgis alleges that Defendants violated the FDCPA by making misrepresentations to her and to the court during the Marion County lawsuit, which was filed in November 2013. Sturgis does not also allege she discovered the injurious nature of Defendants' conduct within one year of the date she filed her Complaint. Sturgis does not meet her burden of pleading facts which show her claims are timely. Thus, Sturgis's claims alleged in paragraphs 34(c), (d), and (e), paragraphs 36(c), (d) and (e), and paragraph 38(d) are futile as currently pleaded.

III. Defendants' Conduct After the Debt was Satisfied

Defendants argue Sturgis's amendments are futile to the extent they allege FDCPA violations based on Defendants' civil subpoena to U.S. Bank after the Satisfaction of Judgment was filed in the Marion County case. Specifically, they argue that any action they took after Sturgis paid the debt and satisfied the judgment was not "debt collecting activity" and was therefore outside the scope of

the FDCPA. Sturgis did not respond to Defendants' arguments in her Reply.

The FDCPA was enacted for three purposes: (1) "to eliminate abusive debt collection practices by debt collectors;" (2) to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged;" and (3) "to promote consistent state action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). To this end, Congress made it unlawful for "debt collectors" to engage in certain conduct in relation to its debt-collection efforts. Of relevance here, the FDCPA makes unlawful the following: (1) "conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt;" (2) making "false, deceptive, or misleading representations . . . in connection with the collection of any debt;" and (3) to "use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. §§ 1692d-1692f.

Defendants argue that no provision of the FDCPA prohibited them from serving U.S. Bank with a subpoena to produce information about Sturgis because the subpoena was issued after the debt was satisfied. Therefore, according to Defendants, the subpoena was not "debt-collection activity" and was not covered by the statute. In support for their argument, they cite two cases from the southern district of California where the court held that a plaintiff "cannot allege a claim for violation of the FDCPA based on conduct occurring after he paid his debt in full, even if he paid under protest." *Winter v. I.C. System, Inc.*, 543 F. Supp. 2d 1210, 1213 (S.D. Cal. 2008); *See also Miller v. Bank of Am., N.A.*, 858 F. Supp. 2d 1118, 1123 (S.D. Cal. 2012) (Defendant's "misconduct is not actionable under the FDCPA because it occurred after the Plaintiff's debt with Defendant was settled.")

District court opinions are not controlling authority, and this court is not required to follow

decisions by other district courts in absence of Ninth Circuit precedent. Moreover, the court does not find the courts' analyses in *Winter* and *Miller* persuasive. First, § 1692a of the FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction . . . ." 15 U.S.C. § 1692a(5). The FDCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. 1692a(3). The FDCPA makes unlawful certain conduct undertaken to collect an "alleged obligation" by the consumer, and debt collectors may run afoul of the FDCPA where the consumer does not legally owe a debt, but the debt collector nonetheless attempts to collect the debt pursuant to the mistaken allegation that the consumer owes a debt. The text of the FDCPA does not distinguish between a situation where the debt collector mistakenly believes a debt is owed at the outset of its collection efforts and a case where, as here, a debt collector continues collection activities after the underlying debt has been satisfied. *See also Staub v. Harris*, 626 F.2d 275, 277 (3d Cir. 1980) ("In order to prevent collection action against the wrong person or against a debtor who has already paid, the Act requires the debt collector to validate the debt.")

The court's interpretation of the FDCPA on this point is consistent with courts in other circuits. In *Fetters v. Paragon Way, Inc.*, Civil Action No. 1:10-cv-00904, 2010 WL 5174989, at *3-*4 (M. D. Penn. Dec. 15, 2010), the plaintiff alleged the defendants continued collection efforts after the plaintiff had satisfied the underlying debt and sued under the FDCPA. *Id.* at *2. The defendants moved for summary judgment and argued that because the debt had been satisfied, any conduct in which the defendants may have engaged was not debt-collection activity. Therefore, according to defendants, their conduct was not actionable under the FDCPA. *Id.* Relying on the Act's definitions, the court concluded the plaintiff adequately stated a claim under the FDCPA by

alleging "that [d]efendants took coercive action, albeit erroneously, to collect an alleged obligation for payment. In this way, although the debt was already settled, [d]efendants allegedly represented that the debt was outstanding and engaged in prohibited conduct aimed at collecting it. *Id.* at *4. The court found persuasive "the broader purpose of the FDCPA of deterring unfair and deceptive debt collection practices" and "eliminating 'abusive debt collection practices by debt collectors . . . .'" *Id.* at *3.

Here, a judgment was entered against Sturgis in the Marion County court case. She eventually satisfied the judgment and a "Satisfaction of Judgment" was docketed in the Marion County court. Sturgis alleges that after that Satisfaction of Judgment was entered, Defendants continued to engage in unlawful conduct under the FDCPA by serving U.S. Bank with a subpoena to produce information about Sturgis pertaining to the now-satisfied debt. Sturgis alleges Defendants served the subpoena under their mistaken allegation and belief that the debt remained unpaid. Pursuant to the statutory text and purpose of the FDCPA, Defendants' alleged actions are within the FDCPA's prohibitions. Therefore, Sturgis's PSAC adequately states a claim.

*Conclusion*

For the aforementioned reasons, Sturgis's Motion for Leave to Amend (Dkt. No. 40) is GRANTED in part and DENIED in part. Sturgis's amendments alleging new claims based on conduct Defendants' attempt to collect nine-percent prejudgment interest are barred by issue preclusion. Sturgis's amendments regarding Defendants' conduct occurring on or after January 29, 2014, should be allowed, but her claims based on conduct predating that date, including the allegations contained in paragraphs 34(c), (d), and (e), paragraphs 36(c), (d) and (e), and paragraph 38(d) will not be allowed unless Sturgis pleads additional facts which show she is entitled to the

benefit of the discovery rule. Finally, Sturgis's allegation that Defendants violated the FDCPA by issuing a subpoena after the debt was satisfied is not futile and is allowed.

IT IS SO ORDERED

This 19th day of January 2016.

_____
JOHN V. ACOSTA
United States Magistrate Judge