IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| JOANNE M. STURGIS, | Civ. No. 3:15-cv-00122-AC |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| ASSET ACCEPTANCE, LLC, a Delaware Limited Liability Company, and JOHNSON MARK, LLC, a Utah Limited Liability Company, | |
| Defendants. | |

ACOSTA, Magistrate Judge:

*Introduction*

Plaintiff Joanne Sturgis ("plaintiff") filed this lawsuit on January 29, 2015, alleging defendants violated the Fair Debt Collection Practices Act (FDCPA) and caused her to experience significant stress. The parties reached a settlement agreement at a judicial settlement conference on February 25, 2016. (ECF No. 57.) The amount of the settlement is filed under

1 – OPINION AND ORDER

seal with the court. The settlement agreement resolved the amount of money to be paid to plaintiff and directed the parties to petition the court for attorneys' fees. *Id.*

Plaintiff seeks a total of $67,113.50 in attorney fees, in addition to costs and expenses of $3,369.50. Plaintiff also requests an award for fees incurred in her fee application. Defendant Johnson Mark LLC opposes the requested attorney fees as excessive. (ECF No. 76.) Defendant Asset Acceptance, LLC, joins in and adopts the arguments in defendant Johnson Mark LLC's opposition to plaintiff's motion for attorney fees and costs. (ECF No. 75.) Because the settlement agreement includes the submission to the court the question of reasonable and necessary costs and fees incurred by plaintiff in the prosecution of this lawsuit, the sole issue before this court is the reasonableness of the requested rates and hours incurred by plaintiff's counsel. For the reasons that follow, plaintiff's motion is GRANTED IN PART and DENIED IN PART, and plaintiff is awarded $45,027.70 in attorneys' fees and $3,369.50 in costs.

*Background*

This lawsuit arose out of defendants' conduct in seeking to collect a debt that arose from a Radio Shack/Citibank credit card. In November, 2013, defendants filed a lawsuit against plaintiff in the Marion County Circuit Court to collect on the unpaid credit card debt. (ECF No. 1.) The Marion County court entered a default judgment against plaintiff on February 4, 2014. Plaintiff offered to settle the judgment and defendants sent a counteroffer for settlement on May 5, 2014. On May 12, 2014, plaintiff learned that the bank account she jointly held with her husband had been garnished for the total amount of $910.01. Plaintiff then contacted defendants and informed them that her bank account was held jointly with her husband, and expressed her intent to pay the settlement amount.

On May 29, 2014, plaintiff received a letter from Johnson Mark confirming an offer of settlement that did not give credit for the money that had been garnished from plaintiff's bank account. Plaintiff immediately called Johnson Mark and was told that it was too late to pay the settlement amount. On July 5, 2014, plaintiff paid the judgment balance in full.

Plaintiff filed this lawsuit on January 29, 2015, seeking non-economic damages of up to $500,000 for defendants' violations of the FDCPA. (ECF No. 1.) Plaintiff's complaint contained no allegation in which she disputed the existence or amount of debt she owed to defendants.

Plaintiff filed her complaint in the Portland Division of the U.S. District Court of Oregon. On February 20 2015, defendant Johnson Mark moved to dismiss plaintiff's complaint because it was not filed in the correct division. (ECF No. 9.) On March 2, 2015, plaintiff filed an amended complaint in the Portland Division. (ECF No. 16). Defendant subsequently withdrew its motion to dismiss.

 In an attempt to keep costs down, defendants did not engage in discovery until late 2015, and Johnson Mark did not depose plaintiff until February 18, 2016, one week before the settlement conference. Defendants did not make attempts at settlement until about nine months after the case was filed. On February 25, 2016, the parties participated in good faith in a settlement conference and reached a settlement agreement. The parties agreed to submit to the court the question of plaintiff's reasonable and necessary costs and fees in the prosecution of this action. On April 5, 2016, plaintiff submitted her motion for attorney fees and costs. (ECF No. 60.)

\\\\\
\\\\\
\\\\\

3 – OPINION AND ORDER

*Discussion*

I.      Attorney Fees.

    *A.  Legal Standards*

The FDCPA provides that in a successful action to enforce the Statute, a debt collector will be liable to the consumer for "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692(k)(3). The FDCPA mandates an award of fees and costs to a prevailing consumer in order to encourage consumers to act as private attorneys general in order to enforce the public policy goals of the FDCPA. 15 U.S.C. § 1692(k); *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 978 (9th Cir. 2008).

The Ninth Circuit has adopted the "lodestar" method for calculating attorney fees. *Camacho,* 523 F.3d at 980; *Fischer v. SJB–P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). That calculation multiplies a reasonable hourly rate by the number of hours reasonably expended in the litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986). The court must then decide whether to enhance or reduce the lodestar figure by evaluating a number of factors. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008); *Hensley*, 461 U.S. at 434. These factors include: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Kerr v. Screen Actors Guild, Inc.*,

526 F.2d 67, 70 (9th Cir. 1975), *cert. den.* 425 U.S. 951 (1976); *Fischer*, 214 F.3d at 1119. The court need only address those factors not already subsumed in its lodestar analysis. *Hensley*, 461 U.S. at 436. There is a strong presumption that the lodestar method produces a reasonable figure, and should only be enhanced or reduced in exceptional circumstances. *Del. Valley Citizens*, 478 U.S. at 565; *Fischer*, 214 F.3d at 1119 n.4.

    B.  *Reasonable Hourly Rate.*

A reasonable hourly rate is determined by looking to the "prevailing market rates in the relevant community" as well as the skill, experience, and reputation of the lawyer. *Blum v. Stenson*, 465 U.S. 886, 895 (1984); *United States v. $28,000 in U.S. Currency,* 802 F.3d 1100, 1105 (9th Cir. 2015); *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013). In *Van Skike v. Director, Office of Workers Compensation Programs*, 557 F.3d 1041 (9th Cir. 2009), the court observed:

> The Supreme Court has consistently held that reasonable fees "are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel." *Blum v. Stenson*, 465 U.S. 886, 895, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984). The burden is on the fee applicant himself "to produce satisfactory evidence" of the relevant market rate. *Id*. at 896 n.11, 104 S. Ct. 1541. . . .
>
> The relevant community is generally defined as "the forum in which the district court sits." *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997).

*Van Skike v. Director*, 557 F.3d at 1046. The prevailing market rate can also be shown through affidavit of the prevailing party's attorneys or through testimony of other attorneys. *Blum v. Stenson*, 465 U.S. 886, 893-96 (1984).

The party requesting the fees has the burden of producing "satisfactory evidence," in addition to the affidavits of its counsel, the requested rates are in step with those "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and

5 – OPINION AND ORDER

reputation." *Dang v. Cross*, 422 F.3d 800, 814 (9th Cir. 2005) (quoting *Blum*, 465 U.S. at 895 n.11). This district has formally recognized that the Oregon State Bar Economic Survey represents the prevailing market rates in this district (*see* Local Rule 54-3(a) "Practice Tip" ("As for the reasonable hourly rate, the Court uses the most recent Oregon State Bar Economic Survey ("OSB Survey") as its initial benchmark."); *Roberts v. Interstate Distrib. Co.*, 242 F. Supp. 2d 850, 857 (D. Or. 2002); *Arnold v. Pfizer, Inc.*, 3:10-cv-01025-AC, 2015 WL 4603326, *1 (D. Or. July 29, 2015). If the rate requested exceeds the average rate reported in the OSB Survey, the burden is on the prevailing party to justify that higher rate. *Copeland-Turner v. Wells Fargo Bank, N.A.*, No. 3:11-CV-37-HZ, 2012 WL 92957, at *2 (D. Or. Jan. 11, 2012). Even when such justification is present, the court usually limits the hourly rate to the 75th percentile of the OSB Survey. *McElmurry v. U.S. Bank Nat'l Ass'n*, 2008 WL 1925119, at *3 (D. Or. Apr. 30, 2008); *Knowledge Learning Corp.*, 2011 WL 2133824, at *5.

The 2012 OSB Survey indicates that hourly rates for Portland attorneys in practice 10-12 years range from a median of $275 to a 95th percentile of $428. Applying a 2.0 percent annual increase of those rates for inflation results in a $291 median rate and a $454 95th percentile rate. Plaintiff seeks fees for the two lawyers, Tim L. Eblen and Michelle K. Freed, who represented plaintiff (ECF No. 60), for 126.2 hours of Eblen's work at an hourly rate of $340, and 64.8 hours of Freed's work at an hourly rate of $340.[1] Because plaintiff requests rates that exceed the in the OSB survey average rates applicable to her lawyers, she bears the burden to justify that higher rate. *See Turner*, 2012 WL 92957 at *2 (the prevailing party must explain why an attorney deserves an above-median rate for the work performed in a particular case).

\\\\\

---

[2] Plaintiff also requests compensation for 18.9 hours of paralegal work at an hourly rate of $115. Defendants do not object to this request.

6 – OPINION AND ORDER

Plaintiff offers two justifications for the higher rates she seeks. First, she points to attorney fee awards to her lawyers received in another case filed in this district and in one case filed in Multnomah County Circuit Court, but fees awards received in other cases do not necessarily reflect the appropriate hourly rate because those cases may involve substantive and procedural facts as well as legal issues more or less complex than those present here. *See, e.g., Knowledge Learning Corp. v. National Union Fire Ins. Co. of Pittsburg, PA*, Case No. 10-cv-188-ST, 2011 WL 2133824, at *6 (April 19, 2011) (observing that reliance on other cases approving hourly rates similar to those requested is misplaced where no details are provided to "meaningfully compare" the cited cases to the case at hand). Here, plaintiff's attorneys rely only on two other cases and they provide no description of either case that allows this court to evaluate the basis for the hourly rate determinations in those other cases. Furthermore, the instant case was not complex legally or factually to warrant enhanced hourly rates greater than the applicable OSB Survey rates.

Second, plaintiff relies on expert testimony which, in turn, relies in part on the Morones Survey of Commercial Litigation Fees (2014 ed.). *See, e.g.,* Declaration of David Sugarman, ECF No. 64, at 2 ("I re-reviewed the Oregon State Bar *Economics Survey* (2012) ('*OSB Survey*') and the *Morones Survey of Commercial Litigation Fees* (2014 Update) ('*Morones Survey*')."). The Morones Survey is a report conceived and developed by two Portland commercial litigation lawyers for the narrow purpose of supporting their expert testimony submitted in connection with attorney-fee motions. The report itself contains statements that describe this purpose:

> [The attorneys] commissioned the survey for the purpose of developing accurate market data to support their frequent expert testimony in attorney fee disputes. They previously suffered from a lack of complete, empirical market data to use in fee disputes.
>
> They defined their relevant market as each law firm located in the metro Portland area with more than five attorneys specializing in commercial litigation. They defined

7 – OPINION AND ORDER

"specializing" as spending more than 50% of their time in the practice of commercial litigation.

*See, e.g., Morones Survey of Commercial Litigation Fees* (2010 ed.), submitted as an exhibit in *Securities and Exchange Commission v. Sunwest Management, Inc.*, Case No. 6:09-cv-06056-HO, ECF No. 1764-2, Page ID No. 32954.

The Morones Survey does not meet the Ninth Circuit's or this district's requirements to serve as evidence of prevailing market rates. First, as described in its "Purpose" statement, the Morones Survey is based on data and reflects hourly rates that reflect a narrow subset of the relevant community. Second, the Morones survey lacks reliability. Its designer did not administer it to achieve a statistically representative cross-section of the forum within which this court sits. Instead, the designer sought information from only certain commercial litigation practitioners, located in a small geographic area of the forum, and whose law firms and practice areas meet specific and narrow criteria. The Morones Survey's definitions further limit its relevance because they do not promote the collection of objective data pertaining to prevailing market rates.

Other judges in this district have rejected the Morones Survey as a standard for assessing attorney fee petitions. In *Miller v. Equifax Information Services, LLC*, Case No. 3:11-CV-01231-BR, 2014 WL 2178257 (D. Or. May 23, 2014), Judge Brown observed:

> Plaintiff requests fees for 747.8 hours of work on this matter performed by four attorneys: Michael Baxter, Justin Baxter, Kachelle Baxter, and Maureen Leonard. This Court uses the most recent Oregon State Bar Economic Survey published in 2012 (OSB Survey) as its benchmark to determine the reasonable hourly rate. Attorneys may argue for higher rates based on inflation, specialty, or any number of other factors. Miller contends the Court should consider the 2012 Morones Survey of Commercial Litigation Fees when determining the reasonableness of her attorneys' requested hourly rates. This district court, however, recently declined to consider the Morones Survey and instead relied on the OSB Survey. *See Precision Seed Cleaners v. Country Mut. Ins. Co.*, No. 10-cv-01023-HZ, 2013 WL 5524689, at *11 (D. Or. Oct. 1, 2013). For those same reasons, the

> Court similarly declines to consider the Morones Survey in this case and relies on the OSB Survey to determine the reasonableness of the hourly rates requested by Miller.

*Id.* at *2. *See also Precision Seed Cleaners v. Country Mutual Insurance Company*, 976 F. Supp. 2d 1228, 1246 (D. Or. 2013) ("And, while Markowitz cites the 2012 Morones Survey of Commercial Litigation Fees in support of his position that Fanning's requested rate is within the range of prevailing market rates, this Court, as noted above, uses the OSB Economic Survey as a benchmark and the rates there are below Fanning's requested rate."). This court agrees with Judges Brown and Hernandez that the Morones Survey does not contain appropriate standards for determining hourly rates for attorney fee petitions in this district.

In determining the appropriate billing rate the court also considers an attorney's experience at the time he or she performed the work. *Precision Seed Cleaners v. Country Mut. Ins. Co.,* 976 F. Supp. 2d 1228, 1246 (D. Or. 2013). Eblen was admitted to the Oregon State Bar in 2005 and has specialized in the fields of debtor-creditor and consumer law for the past 10 years. Freed was admitted to the Oregon State Bar in 2004, and her legal career has focused exclusively on debtor-creditor and consumer law. Both Freed and Eblen have been asked to speak at Continuing Legal Education seminars on debtor-creditor issues, and regularly present on debt settlement options to the public. Freed is listed as attorney in six FDCPA cases in this court, and one case in the Western District of Washington; Eblen is listed as an attorney in five FDCPA cases filed in those courts. Both attorneys produced evidence that they are well-respected in the community and known for their work on debtor-creditor matters. In the case from this district, referenced above, in which they received a fee award, Judge Aiken awarded them hourly rates of $340 in 2015. Decl. Michelle K. Freed, ¶ 3.

A lodestar rate above the OSB Survey median is appropriate only when the particular case being litigated benefitted from or required specialized experience. *Knowledge Learning*

9 – OPINION AND ORDER

*Corp.*, 2011 WL 2133824, at *5. Plaintiff's attorneys have significant experience in litigating debt-collection actions against consumers, but this particular case did not present complex legal or factual issues. From the outset of defendants' attempted to collected the credit card debt, plaintiff conceded she owed the debt originally incurred on the credit card. Thus, in this lawsuit the parties did not litigate, as occurs in many of these cases, that plaintiff actually owed the original debt defendants sought to collect. No issue arose that either party breached some term or condition of the underlying contract for credit which either prevented collection of the debt or accelerated its payment. Furthermore, the FDCPA is interpreted as a strict-liability statue, which reduced plaintiff's burden to prove liability. And while plaintiff argues that the skill required to prosecute this case warrants an upward departure from the median rate, she does not identify complicating features of law or fact that required unusual skill or experience. In sum, this case turned on the straightforward dispute over the manner in which defendants attempted to collect the debt she owed. Finally, while plaintiff's attorneys initially maintained that plaintiff's non-economic damages justified a mid-range six-figure damages award, plaintiff settled her lawsuit for a significantly smaller figure. For these reasons, the specialized experience of plaintiff's counsel and the skill required to prosecute this case does not justify a lodestar rate above the OSB Survey median. *Knowledge Learning Corp.*, 2011 WL 2133824, at *5.

Plaintiff argues that defendants' conduct caused unreasonable delay and justifies an above-median award, but the record in this case does not support this contention. As evidence of dilatory conduct, plaintiff notes that neither defendant made an attempt at settlement for nine months after plaintiff filed her complaint; neither defendant engaged in discovery until late 2015; defendant moved to dismiss the case and then withdrew its motion without explanation; did not depose plaintiff until one week before the settlement conference; and did not make or respond to

10 – OPINION AND ORDER

settlement offers outside of the February 2016 settlement conference. Defendants respond that they delayed engaging in discovery in an attempt to keep costs low for both parties, in hopes that a mediator would make plaintiff's position more reasonable.[2] Taking plaintiff's deposition one week before the settlement conference is consistent with this explanation. Regarding settlement efforts, that defendants did not initiate settlement discussions prior to the settlement conference is not a fact that, by itself, warrants an above-median award of attorney fees. Plaintiff has not submitted evidence that defendants unreasonably rebuffed her settlement overtures, refused to participate in mediation or a settlement conference, or engaged in discovery conduct that unnecessarily increased the cost of litigating this case. On this record, the defendants' litigation conduct does not support a departure from the median rate.

Plaintiff also argues that the fee award should compensate plaintiff's counsel for accepting this case on a contingency fee basis because in doing so, counsel undertook a risk of receiving no compensation. Here, the court does not find that the contingent fee arrangement justifies an upward adjustment from the presumptive hourly rate. While plaintiff's counsel assumed some risk by accepting this case on a contingency-fee basis, the strict liability nature of the FDCPA statue significantly reduced that risk. Furthermore, the Supreme Court in *City of Burlington v. Dague* rejected the contention that an attorney fee award to attorneys retained on a contingency fee basis must go beyond the lodestar, because "an enhancement for contingency would likely duplicate in substantial part factors already subsumed in the lodestar." 505 U.S. 557, 562 (1992). Accordingly, the contingency fee agreement between plaintiff and her counsel does not justify an upward adjustment from the presumptive hourly rate.

---

[2] Plaintiff's complaint and initial offers of settlement maintained a six-figure valuation of non-economic damages; this case settled for a fraction of plaintiff's initial demand.

In sum, nothing about the facts or legal issues in this case set it apart from ordinary FDCPA cases. For these reasons, plaintiff has not met her burden to justify a departure from the presumptive lodestar rate of $291. *See Prison Legal News v. Umatilla Cty.*, No. 2:12-CV-01101-SU, 2013 WL 2156471, at *4 (D. Or. May 16, 2013) (applying median rate based on years practicing law set out in most recent OSB Survey absent good reason to apply a different rate); *see also Bark v. Northrop*, 300 F.R.D. 486, 493 (D. Or. 2014) (same). Therefore, the court awards an hourly rate of $291 per hour to both Freed and Eblen for hours reasonably expended.

### C.  *Hours Reasonably Expended*

Plaintiff asks the court to award fees for 126.2 hours expended by Eblen and 64.8 hours by Freed. A party seeking attorney fees bears the burden to demonstrate that the number of hours spent by counsel were "reasonably necessary" to the litigation and that her attorneys made "a good faith effort to exclude from [the] fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. The court finds counsel's expenditures to be reasonable, with the following exceptions.

First, plaintiff's attorneys' erroneous pleading of intradistrict venue caused unnecessary motion practice and, thus, caused them to expend almost six hours of attorney time unnecessarily. Plaintiff's attorneys acknowledged they wrongly pleaded venue. (*See* ECF No. 18, p. 3, ¶ 9.) Local Rule 3-2 clearly explains how to determine in which division of this district a lawsuit is to be filed. Because plaintiff's error pleading intradistrict venue created needless confusion and ultimately forced defendants to file a motion to dismiss, plaintiff should not recover any of the time spent on responding to defendants' venue motion. Plaintiff's attorneys' hours thus are reduced by the time spent on this issue, 5.9 hours. (ECF No. 62-1, p. 3.)

\\\\\

12 – OPINION AND ORDER

Second, plaintiff seeks to recover for 2.9 hours Eblen spent reviewing and editing the fee ledger attached to his declaration. (ECF No. 62-1, p. 18.) This activity is vaguely described and not reasonably necessary to the litigation; accordingly, it is eliminated. Plaintiff also seeks to recover for .3 hours spent reviewing and choosing spoliation letter forms; this entry is too vague to allow the court to determine whether the task was reasonably necessary to this litigation. (ECF No. 62-1, p. 1.) Thus, this time is eliminated.

Third, plaintiff seeks to recover for 20.3 hours spent preparing settlement conference materials and conferring about settlement in this matter, including 5.8 hours spent with a graphic artist to prepare a visual presentation. (ECF No. 62-1, pp. 15-17.) The court finds this time expenditure unreasonable and reduces it by 5.8 hours. The court further reduces the hours by 3.8 for activities too vaguely described.

Fourth, plaintiff seeks to recover for 12.9 hours' time spent by her attorneys in preparation of a fee petition. (ECF No. 62-1, pp. 17-18.) This entry exceeds the time plaintiff's attorneys spent on preparing for the 30(b)(6) deposition of defendants' representatives. Some of this time seems attributable to plaintiff's attorneys' decision to employ three attorneys as experts on the fee issue and the consequent time incurred to prepare a declaration for each. This is a simple case, as previously discussed, and employing three experts to support an attorney fee petition was unnecessary. Accordingly, the court finds unreasonable 12.9 hours to prepare the fee petition and reduces the time by one-third, to 8.6 hours.

Fifth, plaintiff seeks to recover 3.4 hours for attorney and paralegal time in reviewing and editing discovery requests. (ECF No. 62-1, p. 4.) Plaintiff's records show time entries for multiple partners making edits to interrogatories and discovery requests in excess of 2 hours, after a paralegal made edits to the same documents. *Id.* Because these entries appear duplicative

13 – OPINION AND ORDER

and because of plaintiff's attorneys' depth of experience in this type of case, the court finds these time expenditures to be excessive, and eliminates 1.5 hours spent by attorney Eblen on "final edits and additions to interrogatories, and Notice of Deposition" and "final review and signing of discovery request." *Id.*

The court eliminates an additional 20.3 hours for the following tasks. First, 2.0 hours billed for travel time to plaintiff's home in Salem because the purpose of and need for the trip is not sufficiently described. (ECF No. 62-1, p. 9.) Second, 2.0 hours billed for drafting the first amended complaint, a task that should have taken less time given the plaintiff's attorneys' FDCPA experience and because the amended complaint differed little from the original complaint. (ECF No. 62-1, p. 11.) Third, 4.6 hours for vaguely described time reviewing the case and reviewing documents. (ECF No. 62-1, pp. 1, 5, 16.) And fourth, 11.7 for vaguely described time spent in deposition preparation. (ECF No. 62-1, pp. 6-9.)

In sum, the court reduces plaintiff's hours to a combined 146.2 hours reasonably expended, at an hourly rate of $291 for both attorneys Eblen and Freed. The court therefore awards $42,544.20 in attorney fees.

The following hours of paralegal time are also eliminated because the same tasks are billed by partners: .7 hours making edits and finalizing formatting for documents and interrogatories, and .4 hours writing emails on May 5, 2015. (ECF No. 62-1, pp. 4-5.) The court therefore awards 17.8 hours in paralegal fees, for a total of $2,047. In total, the court awards $45,027.70.

II.     Plaintiff's Bill of Costs.

Plaintiff seeks costs in the amount of $3,369.50 for filing fees, service fees, deposition costs, and copy costs. (ECF No. 60). Defendants do not object to these costs.

*A. Legal Standards*

Costs generally are awarded to the prevailing party in a civil action as a matter of course unless the court directs otherwise. FED. R. CIV. P. 54(d). Pursuant to 28 U.S.C. § 1920, the court may tax specific items as costs against a losing party under FED. R. CIV. P. 54(d)(1). Section 1920 provides:

> A judge or clerk of any court of the United States may tax as costs the following:
>
> (1) Fees of the clerk and marshal;
>
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
>
> (5) Docket fees under section 1923 of this title;
>
> (6) Compensation for court-appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under § 1828 of this title.
>
> A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

The court must limit an award of costs to those defined in 28 U.S.C. § 1920 unless otherwise provided for by statute. *Grove v. Wells Fargo Fin. Ca., Inc.*, 606 F.3d 577, 579-80 (9th Cir. 2010).

*B. Discussion*

The court finds that plaintiff's costs fall within the categories enumerated in Section 1920 and are reasonable. Thus, they are awarded in full.

\\\\\

\\\\\

15 – OPINION AND ORDER

*Conclusion*

For the reasons discussed above, plaintiff's motion is granted in part. Plaintiff is awarded $45,027.70 in attorney fees and $3,369.50 in costs.

IT IS SO ORDERED.

DATED this 14th day of July, 2016.

                                                   /s/ John V. Acosta

                                                   JOHN V. ACOSTA
                                    United States Magistrate Judge